UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-21555-CIV-LENARD/DUBÉ

FABIO CUARTAS,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the Plaintiff (D.E. #15) and the Motion for Summary Judgment filed by the Defendant (D.E. #17) pursuant to an Order of Reference entered by the Honorable Joan A. Lenard, United States District Judge. The issue before this Court is whether the record contains substantial evidence to support the denial of benefits to Plaintiff, Fabio Cuartas (hereinafter "Cuartas" or "Plaintiff").

### I. FACTS

On August 6, 2002, the Plaintiff filed an application for disability insurance benefits, alleging a disability onset date of September 20, 2001. (R. 66-68).[1] On September 11, 2002, the Plaintiff filed an application for supplemental security income. (R. 342-344). Both applications were denied initially and on reconsideration. (R. 40-43, 355-359). An initial hearing was held on November 2, 2005. (R. 365-421). Following the hearing, the ALJ issued a decision denying the request for benefits. (R. 13-29). A request for review filed with the Appeals Council was denied. (R. 6-8).

---

1 All references are to the record of the administrative proceeding filed as part of the Defendant's answer.

The Plaintiff, aged 64 at the time of the hearing, testified that he had a ninth grade education. Cuartas stated that he spoke very little English but was not able to read or write. He stated that he last worked in 2001 because he was unable to bend and did not have enough strength to handle the electric pistol. (R. 369-370). The Plaintiff testified that he currently was not working because he was very depressed and that his blood pressure is very high, he also added that he has pain in his spine and legs, has arthritis, and that his knees, elbows and arms are swollen. (R. 371-372). Cuartas stated that he takes medication every day and that if he does not he cannot get up from bed. (R. 372).

According to the Plaintiff, the medication reduces the swelling and pain of his knees. Cuartas stated that he has also had swelling in his neck for eight months. (R. 373). The Plaintiff testified that he has gotten worse since 2001, when his symptoms started. (R. 374). The Plaintiff stated that he can walk around the house, but not run. (R. 399).

Cuartas lives with his wife and she does everything around the house. (R. 399). Additionally, the Plaintiff stated that his wife must sometimes assist him out of bed. Cuartas testified that he cannot stand for more than one hour but that he does not have problems sitting. (R. 400). He added that he sleeps about three hours at night but that he did not have problems sleeping 7-8 hours when he worked. (R. 401).

The Plaintiff stated that he is always angry and arguing. He added that everything bothers him and he is excitable. (R. 401). Cuartas does not drive, does not see his family members or friends, and does not engage in social activities. He feels depressed every day. (R. 401-402).

In addition to the Plaintiff's testimony, Dr. Robert Salzman, a general medicine and rheumatology expert testified at the hearing as a medical expert. (R. 375). Dr. Salzman analyzed the Plaintiff's rheumatoid arthritis as follows:

> And he has no description of – he has pain, but no objective findings to meet the criteria of rheumatoid. You have to have so many swollen

> joints. You have to have a high sed rate. You have to have positive rheumatoid back. You have to have a number of things put together in order to say that it's rheumatoid. I'm not saying he doesn't have arthritis, but apparently the one-time case of pain in the ankles, they thought it was uric acid, which was minimally elevated.

(R. 376).

Dr. Salzman added that based on the medical records before him, he could not find that the Plaintiff had rheumatoid arthritis. (R. 377). Dr. Salzman testified that the medication the Plaintiff was taking, Prednisone, was taken for any type of arthritis and added that "they asked him to try to get off it, but apparently it's the only thing that helps him." (R. 378). Dr. Salzman stated on several occasions that he did not believe the Plaintiff had rheumatoid arthritis because he did not meet certain criteria such as "swollen joints, so many hot joints, positive rheumatoid nodule, positive blood tests." (R. 384-385). He added that the x-rays do not show severe osteoarthritis. (R. 385).

Dr. Salzman testified that he did not feel that the Plaintiff met any particular listing. (R. 389). Dr. Salzman stated that aside from climbing, there is nothing in the record to indicate that Cuartas would have any physical limitations. (R. 396).

Nicholas Fidanza, a vocational expert, also testified at the hearing. The VE testified that the Plaintiff's past relevant work would be classified as, "806.361-014, medium physical demand, SVP of six, meaning it's a skilled operation." He added that in the DOT almost all airplane mechanics are medium physical demand. (R. 415). According to the VE, with the limitation on climbing, the number of medium jobs available in the national economy would be reduced by 25%. (R. 419).

In addition to the testimony presented at the hearing, medical records were submitted to the ALJ. On October 31, 2001, a psychiatric evaluation was performed by Antonio Fernandez, M.D. (R. 132-133); and on November 1, 2002, a consultative examination was performed by Hector Meruelo,

3

M.D.. (R. 134-137).

Psychiatric Review Technique Form were completed on November 15, 2002 and on May 21, 2003. (R. 138-151, 164-177). Additionally, three Residual Functional Capacity Assessments - Physical were performed on November 20, 2002, June 2, 2003 and April 20, 2004. (R. 152-159, 178-185, 243-249) and a Residual Functional Capacity Assessments - Mental was performed on May 21, 2003. (R. 160-163). A Medical Assessment of Ability to do Work-Related Activities (Physical) dated April 20, 2004 was also submitted as part of the record. (R. 250-253).

The Plaintiff was seen by Alfredo Piniella, M.D. from July 16, 2002 through March 24, 2004. (R. 220-242, 257-259). Records from Jackson Memorial Hospital were submitted covering the period from September 8, 2003 through January 22, 2004. (R. 186-219). Additionally, medical records dated January 13, 2003 to February 24, 2003 were submitted from Total Family Care Center. (R. 254-256). Palmetto Hospital submitted medical records covering the period from June 23, 2005 through July 2, 2005 were submitted. (R. 260-320).

A Medical Assessment of Ability to do Work-Related Activities (Mental), along with progress notes dated September 28, 2005 were completed by Carlos Danger, M.D. and submitted as part of the record. (R.322-325, 330-331). The record also contains treatment notes from Dr. Patricia Mueller of Jackson Memorial Hospital for the period of April 1, 2004 through August 24, 2004. (R. 332-341). The Court will further provide a summation of the relevant facts within the legal analysis on the specific issues raised by the parties.

After a hearing and review of the record, the ALJ issued an opinion finding that the Plaintiff had severe impairments of "low back pain and joint pain and swelling due to osteoarthritis or rheumatoid arthritis, and an affective disorder," but the impairments did not meet or medically equal

the severity of a listing impairment. (R. 24). The ALJ also determined that the Plaintiff retained the residual functional capacity to:

> ... lift and carry 50 pounds occasionally and 25 pounds frequently, sit 6-8 hours and stand and walk 6-8 hours during an 8-hour workday with normal work-breaks, and perform postural activities frequently, except climbing, which he can do only occasionally, with no other significant exertional or non-exertional limitations or mental limitations that would prevent the performance of unskilled work.

(R. 25). The ALJ concluded that there are jobs that exist in significant number in the national economy which the Plaintiff could perform; as such, from February 1, 2003, the Plaintiff was not disabled within the meaning of the Social Security Act.[2] (R. 28).

## II. LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner

---

2. At the conclusion of the hearing, the Plaintiff's attorney amended the Plaintiff's disability onset date to February 1, 2003. (R. 420).

correctly applied the appropriate legal standards. See, Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See, Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Baker v. Sullivan, 880 F.2d 319 (11th Cir. 1989).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. Cornelius v. Sullivan, 936 F.2d 1143, 1145-1146 (11th Cir. 1991).

Social Security regulations establish a five-step sequential analysis to arrive at a final determination of disability. See, 20 C.F.R. section 404.1520; 20 C.F.R. section 416.920 (a)-(f).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. section 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. section 404.1520(c).

At step three, the ALJ compares the claimant's severe impairments to those in the listing of impairments. 20 C.F.R. section 404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments

are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. See, Gibson v. Heckler, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. section 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the claimant can perform. 20 C.F.R. section 404.1520(e)-(f).

The Plaintiff's first contention is that the ALJ erred by according no weight to the Plaintiff's treating physician, Dr. Mueller.

Opinions from treating physicians are entitled to substantial or considerable weight unless there is good cause not according them such weight. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or when the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

Further, the opinions of state agency physicians cannot outweigh the contrary opinion of a treating physician unless the opinion has been properly discounted. Sharfarz v. Bowen, 825 F.2d 278 (11th Cir. 1987). The ALJ provided the following explanation for rejecting Dr. Mueller's assessment:

> Although the claimant's treating physician, Dr. Mueller, completed assessments in April 2004 indicating that the claimant could not perform even sedentary work, i.e. could stand and walk less than 2 hours, sit less than 2 hours, and perform no lifting or postural activities, and would be absent more than 4 days per month (Exhs. 10

7

> and 11F), this was apparently based on examination findings at that time. As indicated above, follow-up examination in May 2004 indicated significant improvement on medication. Further, the assessment is inconsistent with the claimant's recent testimony that he has no significant problem sitting and can stand for 1 hour at a time.

(R. 26).

A review of the medical record reveals that Dr. Mueller made this assessment on April 20, 2004. (R. 243-249). Future follow-up care revealed that the Plaintiff was doing better on medications only one month later. (R. 338). Additionally, during the hearing, the Plaintiff listed limitations much different than the one provided in Dr. Mueller's assessment; namely he mentioned that he had no restrictions with regards to sitting. (R. 400). The ALJ also provided the following summation of Dr. Salzman's hearing testimony:

> As noted by Dr. Salzman, although the claimant has at times been diagnosed with rheumatoid arthritis, this diagnosis is not supported by clinical tests. In any event, the objective signs and findings on record clearly do not satisfy the criteria of section 14.09, the listing for inflammatory arthritis. Although the claimant has also sometimes been diagnosed with osteoarthritis, as noted by Dr. Salzman x-rays in 2003 were normal with no signs of joint space narrowing, bony destruction or ankylosis of the affected joints. Further, with isolated exception, the record indicates that the claimant's condition has not significantly affected his ability to ambulate or to perform fine and gross hand movements as required by 1.02A and B and as defined in 1.00B2b and 1.00B2c. Finally, as discussed below, the claimant's mental impairment imposes at most only mild to moderate limitations.

(R. 25).

It is the opinion of this Court that the ALJ did not err by rejecting the assessment provided by Dr. Mueller. As stated above, the ALJ clearly stated the reasons for rejecting the assessment, namely that although it may have been relevant at the time given, with continued medical care, the assessment was no longer relevant to the Plaintiff's medical condition. The ALJ's determination was

supported by future medical records of Dr. Mueller and the testimony of the medical expert (Dr. Salzman) who like the ALJ pointed out that Dr. Mueller's assessment was inconsistent with the objective medical evidence contained in the record; and by the Plaintiff's own testimony at the hearing. Accordingly, it is this Court's opinion that the Plaintiff's argument must fail and that the ALJ's decision was supported by substantial evidence.

The Plaintiff's second point of contention is that the ALJ's RFC assessment was improper as it did not include any limitations attributed to the Plaintiff's affective disorder. The Plaintiff has tied this argument directly to its first argument contending that had the ALJ accorded the proper weight to Dr. Mueller's assessment, the Plaintiff's RFC would have been reduced. However, this Court had already determined that the ALJ's determination to dismiss the RFC assessment provided by Dr. Mueller was proper, as such it was not error by the ALJ to leave Dr. Mueller's assessment out of the final RFC determination.

In his second argument, the Plaintiff briefly contends that the ALJ also failed in the RFC determination by not posing to the vocational expert certain limitations on the Plaintiff with regards to concentration, persistence or pace as a state agency determined that the Plaintiff's concentration, persistence or pace was moderately limited.

With regard to the report cited to by the Plaintiff, the ALJ stated as follows:

> In agreement with the State agency review psychologist on reconsideration (Exh. 6F), I further find that the claimant has only a mild to moderate mental impairment that would not prevent the performance of unskilled work. In a recent psychiatric assessment dated September 2005, Dr. Danger indicated that the claimant had more severe, disabling limitations, "at present" and for the past 10-12 months, due to his symptoms (Exhibits 15F). I do not give significant weight to this assessment for several reasons. By the claimant's own admission at the hearing, he had only seen Dr. Danger for about 8

months. And in April 2004, Dr. Mueller, the claimant's internist/rheumatologist rheumotologist, indicated that the claimant's condition did not have an emotional or psychological component (Exh. 10F). Further, as indicated above, the few psychiatric notes, which are dated the same time as the assessment, indicate that the claimant has fair judgment, concentration and memory and that his hallucinations are nonintrusive and do not affect his behavior. Moreover, the claimant performed well at the November 2005 hearing – even though he was apparently was not taking any psychiatric medication at the time, other than a sleep aid prescribed by another doctor (Exh. 16F) and notwithstanding that Dr. Danger had prescribed additional medication in September 2005.

(R. 26-27). The primary responsibility of determining a Plaintiff's residual functional capacity is with the administrative law judge. Lewis v. Callahan, 125 F. 3d 1440 (11th Cir. 1997). As noted herein the ALJ sufficiently stated his reasons for finding that the Plaintiff had a mild to moderate limitation on his ability to concentrate, persist and work at pace. Additionally, the Plaintiff did not at the hearing or in his motion introduce any evidence to the contrary. It is therefore the opinion of this Court that the decision of the ALJ be affirmed.

The ALJ's conclusion that, considering the Plaintiff's impairments, he could perform other work in the national economy and was therefore, not "disabled" within the meaning of the regulations is supported by substantial evidence and it is the recommendation of this Court that the decision of the ALJ be affirmed as is consistent with this Report and Recommendation.

### III. CONCLUSION AND RECOMMENDATION

Based on the foregoing, this Court finds that the decision of the ALJ was supported by substantial evidence and that the correct legal standards were applied. Therefore, it is the recommendation of this Court that the decision of the Commissioner be affirmed. Accordingly, the Motion for Summary Judgment filed by the Plaintiff (D.E. #15) should be **DENIED** and the Motion

for Summary Judgment filed by the Defendant (D.E. #17) should be **GRANTED**.

Pursuant to Local Magistrate Rule 4(b), the parties have ten (10) days from service of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Joan A. Lenard, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. Loconte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); R.T.C. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND ORDERED** this 20 day of May, 2008.

ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE

cc:   Honorable Joan A. Lenard
      Jeffrey W. Dickstein, AUSA
      Lilli W. Marder, Esq.

11